Opinion by
Head, J.,
The defendant joined with a number of other persons in signing a paper agreeing to subscribe and pay for certain shares of a proposed corporation which the promoters desired to have formed for the purpose of manufacturing certain products in their community. The defendant subscribed for fifteen shares, the par value of which would be $750. In the spring of 1910 the subscribers held sundry meetings for the purpose of doing the necessary preliminary work to effect the object they had in view. Some expenses were incurred, and these were discharged out of a fund raised by the subscribers, each one paying in a proportionate amount of his total subscription. The defendant, still at that time in harmony with his fellows and active in pushing forward the preliminary work, paid in $187.50. Some time thereafter, but a considerable time before articles of association were finally prepared and filed in the office of the secretary of the commonwealth, the defendant gave formal notice of the withdrawal of his subscription and his determination to go no further in the enterprise. The remaining parties proceeded with the necessary steps to secure the charter, and after it had been granted and the corporation duly organized, this suit was begun by the corporation to recover from the defendant the balance of his subscription.
Two questions and two alone, if determined adversely to the plaintiff’s claim, must necessarily be destructive of it. Could the defendant, after having signed such a paper, at any time thereafter voluntarily withdraw his subscription and relieve himself from liability? If he could, did he exercise his right within the period limited by the law permitting such withdrawal? Both of these questions have been authoritatively answered in the affirmative. In Muncy Traction Engine Co. v. De La Green, 143 Pa. 269, the situation of the subscriber, who undertook to withdraw his subscription, was in no material sense different from that of the defendant in the present case. The learned trial judge held, that until the organization had be *557 come so far completed that the papers were ready to be filed in the office of the secretary of the commonwealth, the whole scheme was inchoate and any subscriber could withdraw at pleasure. In affirming a judgment for the defendant, the Supreme Court said: "At the time De La Green withdrew his subscription, there was no company formed, and there was nothing to prevent all the subscribers to the proposed enterprise from withdrawing from that enterprise had they seen proper. By what legal consideration, then, was De La Green bound? Was he bound because he induced others to sign? But, if the other subscribers to the undertaking were not bound to go on with it, and might at any time before application for a charter have dropped it, surely the defendant was no more bound than they.” In Auburn Bolt & Nut Works v. Shultz, 143 Pa. 256, the question was again more fully considered. The Supreme Court, by Mr. Justice McCollum again declared that the defendant subscriber, the appellee in that case, “might sever his connection with the company and withdraw his subscription at any time prior to the fifth of April, 1887, that being the date it was ready to file its articles in the office of the secretary of the commonwealth.” The opinion then quotes at some length from a declaration of the same principle by Thompson in his work on the Liability of Stockholders, cites the Muncy case, supra, and then continues: "The case cited (the Muncy case) was determined in this court in 1888, but the doctrine of it is familiar and has recognition in many of our preceding decisions: Phipps v. Jones, 20 Pa. 260; Edinboro’ Academy v. Robinson, 37 Pa. 210; Strasburg R. R. Co. v. Echternacht, 21 Pa. 220; Shober v. Park Assn., 68 Pa. 429; Garrett v. Railroad Co., 78 Pa. 465.” (The learned judge below was therefore undoubtedly right in instructing the jury that under the undisputed facts the defendant had only exercised a legal right, at the time he gave notice of his withdrawal from the inchoate association and as a result thereof that the plaintiff had no right to recover?]
*558 The court, however, permitted the jury to go farther and find a verdict in favor of the defendant for $187.50, the amount which he had voluntarily paid into the common fund whilst he was in harmony and active co-operation with his fellow members. [On what principle he could have maintained an action against the plaintiff corporation, after its creation, for the recovery of that money which he had voluntarily paid in discharge of an obligation, which at that time was a valid one, we are unable to discover. If he could not have directly sued the corporation and recovered a judgment for that sum, he cannot indirectly do it by a certificate of balance in his favor in the present aetionp To that extent the judgment entered by the court below has no foundation on which it can rest. We therefore, in the exercise of the power conferred upon us by statute, modify the judgment, and when so modified, affirm it.