# In re Incorporation of Automatic Phonograph Owners Association of Pennsylvania

*Otto W. Woltersdorf*, for applicant.

ALESSANDRONI, J., November 23, 1942.—An application for charter of a nonprofit corporation under the Nonprofit Corporation Law of May 5, 1933, P. L. 289, 15 PS §2851, having been filed, the matter was referred to a master to take the testimony and submit a report thereon. The report of the master, filed on August 5, 1942, does not conclude with any recommendation as to the disposition of the application, hence we have reviewed the entire matter.

There is presently in existence an association known as "Phonograph Operators Association of Eastern Pennsylvania and New Jersey", the 47 members of which are all business men, owning and operating automatically controlled phonograph machines. The proposed corporation is to be a continuation of the existing association.

The purposes of the proposed corporation, as set forth in the articles of incorporation, follow:

"To organize and bring together persons, firms, and corporations who are owners and operators of automatic controlled phonographs and other musical devices in order to study each other's problems for their mutual welfare and well-being, and to achieve by organization and mutual endeavor the improvement of the social and economic conditions identified with the automatic phonograph industry; to take any action for the betterment of the members of the corporation and the industry in general; to promote the highest standards of fair practice with the maximum use of coöperative efforts through the corporation, and to promote fair competition, extension of markets and to foster stabilization of employment; to adopt a proper label or shield that will properly identify the equipment of its members; to establish and form geographically or otherwise local associations or units of the corporation and to insure representation of such local associations or units at the meetings of the corporation, and to provide for election of directors and delegates from such local associations or units; to take, hold, and convey real estate for its own use and benefit, by lease, purchase, rent, devise, or gift; to promote and stimulate social activities by and among its members; and to promote the general welfare of the industry and stimulate public interest in the products of its members; and to do any and all things necessary for the proper conduct of the corporation not in conflict with the laws of the State in which it operates or the laws of the United States."

In view of the opinion we hold of this application, we do not propose to reëxamine the finding of the master as to the lawfulness of the proposed corporation, although we entertain grave doubts which arise from the proposed code of ethics intended to be a part of the constitution, which might well lead to the conclusion that an unlawful restraint of trade is contemplated by the corporation. Our conclusion, however, turns upon

a more concrete question, to wit, does the proposed corporation come within the purview of the statute?

Section 2 of the act, 15 PS §2851-2, defines a non-profit corporation as one "organized for a purpose or purposes not involving pecuniary profit, incidental or otherwise, to its members." Examining the statement of purposes, we find that both in certain of the declared purposes as well as meanings implicit in the written words, this proposed corporation is for the "pecuniary profit, incidental or otherwise" of its members. Clearly, the "improvement of the . . . economic conditions", the "extension of markets," and the promotion of "the general welfare of the industry and [to] stimulate public interest in the products of its members," must be regarded as intended for the pecuniary profit of the members of the association. Further, what is intended in the "study [of] each other's problems for their mutual welfare and well-being" or the taking of "action for the betterment of the members of the corporation and the industry in general" if not the pecuniary benefit, incidental or otherwise, of the members of the proposed corporation?

At the hearing before the master, considerable emphasis was placed upon the intendment of the corporation to prohibit the use of "smutty" records. Certainly this is a laudable purpose and of benefit to the community, but it impresses us as being designed primarily for the benefit of the members of the corporation, and the extension and promotion of the business.

We have read the testimony of William L. King, president of the existing association and one of the incorporators of the proposed corporation, with great care. His testimony fairly presents the intention of the proposed corporation. He stated, "We have our money invested in the same sort of business, therefore we are all trying to reap the same benefits." He explained the declared purpose "to promote fair competition and extension of markets" in the following fashion:

"We try to instruct our members what is a fair price in regards—they must make a profit. We don't want to see anybody lose money"; and extension of markets "is a different phase of the business. As time goes on we try to get more money out of our machines. . . ."

No useful purpose would be accomplished by a further recital of this witness's elaboration and explanation of the declared purposes, except to note the following question and answer:

"Q. As I understand your testimony the proposed corporation really has very little social problems.

A. It's strictly business. There isn't much social life to it."

The Act of April 29, 1874, P. L. 73, repealed by the present act under consideration, had specific provision for the incorporation of bodies "for the encouragement and protection of trade and commerce," which characterization might be applied to the proposed corporation. However, even under that act, it would seem clear that a charter could not have issued to this body: Hebeler's Appeal, 296 Pa. 431 (1929). Looking to the definition of a nonprofit corporation, as set forth in that case, as a guide to the determination of this application, we are bound to conclude that the proposed corporation does not qualify as a nonprofit corporation. See also In re Fayette Gasoline Retailers Association, 32 D. & C. 165 (1938).

The applicant has urged upon us that in our consideration we are limited to an examination of the purposes of the corporation, to determine whether or not they be "lawful and not injurious to the community." This, however, disregards the provision of the Nonprofit Corporation Law, which provides: "If the court shall find the articles to be in proper form and *within the provisions of this act* . . .": article II, sec. 207, 15 PS §2851-207. (Italics supplied.) We thus understand our primary function to be a determination of whether or not the corporation qualifies within the

class of nonprofit corporations. Out of our examination of the application and the entire record we have answered that inquiry in the negative.

## Order

And now, to wit, November 23, 1942, upon consideration of the application and the articles of incorporation, and the evidence submitted on behalf of the applicants, it appearing that the said articles are not in compliance with the provisions of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, 15 PS §2851, the application is refused.