## TAFT v. COMMISSIONER OF INTERNAL REVENUE.

## COMMISSIONER OF INTERNAL REVENUE v. TAFT.

### Nos. 7544, 7545.

Circuit Court of Appeals, Sixth Circuit.
Nov. 2, 1937.

668

Robert A. Taft, of Cincinnati, Ohio (John H. More and Taft, Stettinius & Hollister, all of Cincinnati, Ohio, on the brief), for R. A. Taft.

L. W. Post, of Washington, D. C. (James W. Morris and Sewall Key, both of Washington, D. C., on the brief), for Commissioner of Internal Revenue.

Before HICKS, and SIMONS, Circuit Judges, and NEVIN, District Judge.

SIMONS, Circuit Judge.

Each petition raises the question whether benefactions of Anna Sinton Taft, deceased, are properly deductible from her gross estate in computation of estate taxes under the Revenue Act of 1926 (44 Stat. 9). The Commissioner of Internal Revenue determined a deficiency, which the Board of Tax Appeals in some respects reversed and in others affirmed. 7544 is the petition of the executor, and 7545 the petition of the Commissioner, to review the order of the Board.

The claims against the estate of the decedent which were disallowed as deductions from her gross estate consisted of pledges: To establish a $2,000,000 fund at the University of Cincinnati to endow the study and teaching of the "humanities" styled the Charles Phelps Taft Memorial Fund; to provide the Cincinnati Institute of Fine Arts with funds to employ two additional musicians for the Cincinnati Symphony Orchestra; to contribute toward the salary of a Director of Art for the Institute; and to provide funds for the University to pay the salary of a professor to conduct a course in musical appreciation. The offers were accepted by the several institutions, and commitments made by them in reliance thereon. Claims allowed consisted of pledges to educational, religious, and philanthropic institutions contingent on

other pledges equaling or exceeding in amount the sums pledged, an agreement with the owner of the Cincinnati Conservatory of Music for the transfer of that school to the Cincinnati Institute of Fine Arts in return for annuities to be paid to her and another, and an agreement to finance a research expedition and the publishing of a work thereon.

Mrs. Taft died in 1931, and in claiming deductions from her gross estate in his inheritance tax return, the executor relied upon section 303 of the Revenue Act of 1926 (44 Stat. 72). In so far as applicable, it reads:

"For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) * * * Claims against the estate * * * to the extent that such claims * * * were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth. * * *

"(3) The amount of all bequests, legacies, devises, or transfers, to or for the use of * * * any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual."

The specific questions involved in the executor's petition are whether the various obligations incurred by Mrs. Taft during her lifetime were "incurred or contracted bona fide and for an adequate and full consideration in money or money's worth" under subsection (a) (1), or, in the alternative, whether her pledges to charitable, artistic, and educational institutions were "transfers," within the meaning of subsection (a) (3). In respect to the first, it is urged that since each pledge constitutes under the laws of Ohio a legally binding obligation on the executor which he is required to discharge by the payment of cash out of the estate, was incurred in good faith without purpose to avoid inheritance tax, and for a valuable consideration sufficient under Ohio law to support a contract, all of the conditions required by the statute are present, and the resulting claims are deductible within the meaning of section 303 (a) (1).

That the obligations incurred by the decedent were enforceable under Ohio law, or that they were incurred in good faith, is not challenged. It is not disputed that the gratification which a donor may derive from contributions to religious, philanthropic, or educational enterprises supplies, under applicable local law, the consideration necessary to sustain a contract to contribute. The real controversy in relation to subsection (a)·(1) is whether the consideration for each promise was "adequate and full consideration in money or money's worth," within the meaning of the statute.

■ It is no longer open to dispute that except where the taxable nature of interests is left to be determined by local law, their subjection to or exemption from federal taxation is controlled by the taxing statute and no other, for as was said in Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199, "The state law creates legal interests, but the federal statute determines when and how they shall be taxed," or as in Weiss v. Wiener, 279 U.S. 333, 337, 49 S.Ct. 337, 338, 73 L.Ed. 720, "The Act of Congress has its own criteria, irrespective of local law." In so far as it is suggested that present deductions should be sustained on the ground that they would have been unquestioned had the sums pledged been paid during the decedent's lifetime, or been made the subject of testamentary disposition, the answer is to be found in the recent case of Founders General Corporation v. Hoey, 300 U.S. 268, 275, 57 S.Ct. 457, 460, 81 L.Ed. 639, where it was said: "To make the taxability of the transaction depend upon the determination whether there existed an alternative form which the statute did not tax would create burden and uncertainty."

Courts which sustain the executor's view of the meaning to be ascribed to the language of subsection (a) (1), Turner v. Commissioner, 85 F.(2d) 919, 107 A.L.R. 1468 (C.C.A.3); Commissioner v. Bryn Mawr Trust Co., 87 F.(2d) 607, 609 (C. C.A.3); United States v. Mitchell, 74 F. 2d 571 (C.C.A.7); In re Atkins' Estate, 30 F.(2d) 761, 764 (C.C.A.5), apparently do so upon the assumption that the phrase connotes no more than a "valuable" consideration or one sufficient in law to support a promise. So it was said in the Third Circuit (the Bryn Mawr Trust Company Case), "It is an elementary rule that a legal consideration may take the form either of a benefit to the promisor or of a detriment or loss to the promisee," and in the Fifth Circuit (the Atkins' Estate Case), "Under the law of Louisiana, which is controlling, regardless of decisions to the contrary in other states, there was sufficient consideration for the notes." But that something more than this must be the fair intendment of its careful phrasing clearly appears when we trace the historical evolution of section 303(a) (1). In corresponding sections of the Revenue Acts of 1918 and 1921, § 403(a) (1), 40 Stat. 1098, 42 Stat. 279, claims against an estate might, without limit, be deducted when they were such as were allowed by the laws of the jurisdiction under which the estate was administered. In the 1924 act (§ 303(a)(1), 43 Stat. 305) they were required to have been incurred "for a fair consideration in money or money's worth." In the 1926 act, here applicable, a "fair" consideration became an "adequate and full consideration."

■ Since by all accepted rules of interpretation changes in the wording of statutes must be construed, in the absence of other implications, as denoting intent to change the law, for Legislatures are not presumed to do vain things, it seems clear that claims are no longer to be tested by the laws of the jurisdiction under which estates are being administered, nor even by such connotation as may in the past have been given to the phrase "fair consideration." Something more than that is required to establish an allowable deduction, and we see no occasion to give·to the language of the 1926 act any but its plain and ordinary meaning. This is the view held in the Second Circuit, Porter v. Commissioner of Internal Revenue (C.C.A.) 60 F.(2d) 673, 675, affirmed without discussion on this point, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880, in the Eighth Circuit, in Glaser v. Commissioner (C.C.A.) 69 F.(2d) 254, and in the dictum announced by this court in Latty v. Commissioner, 62 F.(2d) 952, 954. With full consideration to the recognized policy of the Congress to encourage and to relieve from onerous tax exactions gifts to charitable, religious, and educational institutions, and however "precious and priceless," to borrow a phrase from the Turner Case, supra, the ability to gratify desire in this respect may be to the philanthropic donor, yet measured by the precise tests of the statute, the promised donations here under consideration are but gifts, and there is no support for them as claims against the estate which may be deducted, of that full

and adequate consideration in money or money's worth that is the unavoidable requirement of the statute. This is without consideration to the Commissioner's contention, hereinafter discussed, that the statutory provision in question relates only to claims arising out of financial transactions and to those wherein the consideration moves to the decedent and augments his estate.

Failing relief under section 303(a) (1), the executor urges in the alternative that the decedent's pledges here involved are transfers to the use of corporations organized and operated exclusively for religious, charitable, and educational purposes under subsection (a) (3). There is support for that view in Porter v. Commissioner, supra, although reasons for arriving at decision in this respect are not elucidated by the court. Affirmance of the Porter Case does not control us upon the point in issue, for it was not presented in the application for certiorari, and is not in the affirming opinion discussed. Nor do Turner v. Commissioner, supra, and Commissioner v. Bryn Mawr Trust Co., supra, add anything of persuasiveness to the Porter Case, since the Third Circuit Court of Appeals considered itself concluded by its affirmance. Notwithstanding the cited decisions, it is difficult to understand how a pledge, unexecuted during the life of the promissor, however binding under local law, may constitute a transfer. This is the view taken by the court in Glaser v. Commissioner, supra, and is supported by the history of the provision. The 1918 act in the same environment used the word "gifts." This was changed to "transfers" in the 1921 act, and it has so remained in the Revenue Acts of 1924 and 1926. The most that can be said, we think, in the instant case, is that the decedent had contemplated a transfer and had promised to make one. We are unable to conclude that the transfer, if ever it is made, will relate back to the promise to make it, especially as there was by the decedent no allocation of funds or securities to the carrying out of the pledge. None of the several pledges of the class involved in the executor's appeal require the application of a different principle, and his petition must be overruled.

The deductions from gross estate sustained by the Board and now challenged by the petition of the Commissioner stand on a different footing. In respect to each of them, full and adequate consideration may clearly be recognized. In respect to pledges which were contingent upon sums being contributed by others equal to or in excess of the decedent's pledge the consideration is money, and in respect to other claims such as annuities in return for the transfer of the Cincinnati Conservatory of Music to the Institute of Arts and the work of scientific men in a research and publishing enterprise, the consideration is property or services. The argument of the Commissioner in respect to them is that the statute contemplates that consideration must move to the decedent and augment her estate, and that the claims must arise in financial or business transactions. There is some such view indicated by Judge Hickenlooper in the Latty Case, supra. It is but dictum, however, and even so there is recognition that: "There are instances in which it is practically impossible to say that a fair consideration is not to be regarded as a consideration in money or money's worth"—citing Ferguson v. Dickson, 300 F. 961 (C.C.A.3). The weight of authority, however, is clearly to the effect that deductions for claims are nowhere in the statute conditioned upon the consideration supporting them moving to the decedent, although in the usual case that situation will probably exist. The phrasing of the statute is clear, and we see no necessity for reading into it a condition not there expressed. This is the view held by most of the courts which have had occasion to interpret the section. "We need not limit it to cases where the consideration passes to the testator," Porter v. Commissioner, supra, and to the same effect United States v. Mitchell, supra, Commissioner v. Bryn Mawr Trust Co., supra, and the recent case of Carney v. Benz, 90 F.(2d) 747, 749, (C.C.A.1).

It has on occasion been suggested, arguendo, that this section of the statute relates only to financial or business transactions; a suggestion receiving some support from the language of the Glaser, Porter, and Benz Cases. It seems to us, however, sufficient to say that there is in our view no more occasion for reading into the statute a limitation that confines allowable deductions to those claims which arise in business or financial transactions than to read into it a limitation which confines it to claims based upon consideration which moves to and augments the decedent's es-

tate. The Commissioner's petition to review should likewise be overruled.

The order of the Board of Tax Appeals is affirmed.